2011 WY 110

**The STATE of Wyoming, Petitioner,**

v.

**Douglas JUAREZ, Respondent.**

**No. S–10–0260.**

Supreme Court of Wyoming.

July 14, 2011.

---

Representing Petitioner: Bruce A. Salzburg, Wyoming Attorney General; Terry L. Armitage, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; and Justin A. Daraie, Assistant Attorney General.

Representing Respondent: Robert T. Moxley of Robert T. Moxley, P.C., Cheyenne, WY.

Before KITE, C.J., and GOLDEN, HILL, VOIGT, and BURKE, JJ.

HILL, Justice.

[¶ 1] The State of Wyoming challenges the district court's "Order Granting [Douglas Juarez's] First Motion to Suppress (for an illegal traffic stop)." On appeal, the State contends that the district court erred in ruling that Juarez was not required to signal his merge from an entrance ramp onto an interstate highway.

[¶ 2] We affirm the district court.

## ISSUE

[¶ 3] The State raises one issue before this Court:

The district court erred in holding that Wyo. Stat. Ann. § 31–5–217 is ambiguous and does not require motorists to signal when merging onto an interstate roadway; a ruling which led the court to find a traffic stop was illegal and to suppress the evidence subsequently discovered.

## FACTS

[¶ 4] On March 1, 2010, State Trooper Jason Green stopped Juarez for failing to signal his merge from an entrance ramp onto the right lane of I–80 right outside of Rawlins. A subsequent search of Juarez's vehicle yielded nine pounds of marijuana and, as a result, Juarez was charged with two felonies: Possession, and possession with intent to deliver. Juarez filed a motion to suppress that claimed the initial traffic stop was illegal. The district court agreed with Juarez. The State sought review of the district court's decision by way of a petition for writ of review, which this Court granted. More facts will be set out in the discussion section as necessary.

## STANDARD OF REVIEW

[¶ 5] We very recently reiterated that our rules about statutory interpretation are very clear:

The interpretation of statutes is a question of law to be reviewed *de novo*. *French v. Amax Coal West,* 960 P.2d 1023, 1027 (Wyo.1998). "The fundamental rule we invoke in the interpretation of a statute is that we must ascertain, if possible, what the legislature intended by the language it used." *McCreary v. Weast,* 971 P.2d 974, 979 (Wyo.1999).

Our review of statutory interpretation begins with an inquiry into the ordinary and obvious meaning of the words employed by the legislature according to the manner in which those words are arranged. *Id.; Sheridan Commercial Park, Inc. v. Briggs,* 848 P.2d 811, 815 (Wyo.1993). If more than one reasonable interpretation exists, we resort to general principles of statutory construction. *Moncrief v. Wyoming State Bd. of Equalization,* 856 P.2d 440, 444 (Wyo. 1993) (*quoting Parker Land and Cattle Co. v. Wyoming Game and Fish Com'n,* 845 P.2d 1040, 1044 (Wyo.1993)). When the legislature has spoken in unambiguous terms, however, "we are bound to the results so expressed." *State ex rel. Wyoming Workers' Compensation Div.*

*v. Bergeron,* 948 P.2d 1367, 1369 (Wyo. 1997).

*Platte Development Co. v. Wyoming Environmental Quality Council,* 966 P.2d 972, 974 (Wyo.1998). We construe the statute as a whole, giving effect to every word, clause, and sentence, and we construe together all parts of the statute in *pari materia. Matter of Lyles,* 957 P.2d 843, 846 (Wyo.1998).

*Garnica v. State,* 2011 WY 85, ¶ 21, 253 P.3d 489, 493 (Wyo.2011) (quoting *Vineyard v. Jenkins,* 983 P.2d 1234, 1235 (Wyo.1999)).

## DISCUSSION

[¶ 6] The question before us is whether or not Juarez's failure to signal violated Wyo. Stat. Ann. § 31–5–217 (LexisNexis 2011), which provides in relevant part:

§ 31–5–217. **Turning movements and required signals.**

(a) No person shall turn a vehicle or move right or left upon a roadway unless and until the movement can be made with reasonable safety nor without giving an appropriate signal in the manner provided by this section.

(b) A signal of intention to turn right or left when required shall be given continuously during not less than the last one hundred (100) feet traveled by the vehicle before turning.

After looking at the statute, the district court concluded that there was no violation of the traffic code and, as a result, the traffic stop was illegal. The court ruled:

The language of the Wyoming statute is similar to those discussed in these cases from sister courts. There is no reason to believe the Wyoming Legislature necessarily intended the use of a turn signal when entering the interstate from a designated on-ramp. As with most traffic-related statutes, Wyoming [Stat. Ann.] § 31–5–217 is intended to promote safety and there is no basis upon which this Court concludes that a motorist is absolutely required to signal to enter the interstate in *every* instance, as the State would argue. The intended course of such vehicles is known and obvious to other motorists; such driv-

ers have no other choice but to enter the interstate. Their course does not require a lane change or a turn, or even necessarily right to left "movement." [Emphasis in original.]

[¶ 7] Each party's interpretation of the statute is contrary to the other. The State asserts that although "turn" and "move right or left" are not defined by statute, other statutes suggest that a vehicle "moves" when driven from inside to outside the bounds of a channel of traffic. Furthermore, the State argues that a driver on an entrance ramp is entering a new lane of travel, and that a signal is appropriate and required by the statute. The State also points to other authorities—WYDOT's Driver's License Manual—that state that a signal is required in this instance.

[¶ 8] In response to the State's arguments, Juarez asserts that the district court was correct and that he did not "move right or left," but rather straight forward as he merged onto the interstate, demonstrating that no signal was required of him. Juarez argues that the State should not be permitted to "engraft" a policy-based "safety" construction onto the statute where there is no plain language to support the State's interpretation of the statute. Furthermore, Juarez suggests that if the legislature had intended to require a signal under the circumstances here, it could have easily and clearly done so.

[¶ 9] In construing statutes, we have stated that:

[O]ur primary consideration is to determine the legislature's intent. All statutes must be construed in *pari materia* and, in ascertaining the meaning of a given law, all statutes relating to the same subject or having the same general purpose must be considered and construed in harmony. Statutory construction is a question of law, so our standard of review is de novo. We endeavor to interpret statutes in accordance with the legislature's intent. We begin by making an inquiry respecting the ordinary and obvious meaning of the words employed according to their arrangement and connection. We construe the statute as a whole, giving effect to every word,

clause, and sentence, and we construe all parts of the statute in *pari materia.* When a statute is sufficiently clear and unambiguous, we give effect to the plain and ordinary meaning of the words and do not resort to the rules of statutory construction. We must not give a statute a meaning that will nullify its operation if it is susceptible of another interpretation. Moreover, we will not enlarge, stretch, expand, or extend a statute to matters that do not fall within its express provisions. *Johnson v. City of Laramie,* 2008 WY 73, ¶ 7, 187 P.3d 355 (Wyo.2008).

[¶ 10] In looking at the Wyoming statute at issue, we acknowledge that a signal is explicitly required by the statute "before turning" and "before moving left or right." Wyo. Stat. Ann. § 31–5–217(b). The State asks us to recognize that the statute requires a signal even without turning and urges us to conclude that merging from the entrance ramp onto the interstate is indeed a movement from right to left.

[¶ 11] In order to be enforceable, statutes are required to provide good notice of the conduct that is required. See *Dougherty v. State,* 2010 WY 127, ¶ 12, 239 P.3d 1176, 1181 (proper statutory language "provides notice to citizens of what conduct is prohibited"). To prove this point, the State focuses on the word "move." "[M]ove" means "chang[ing] or caus[ing] to change position or posture . . . go[ing] or caus[ing] to go from one point to another[.]" *Merriam–Webster Dictionary* 780 (1997). The State insists that the word "move," when reviewed in the context of the statute, suggests that a vehicle moves when driven from inside to outside the bounds of a channel of traffic, thus necessitating a signal. However, we point out that the word "move" does not stand alone in the sentence. The statute reads ". . . move right or left." Wyo. Stat. Ann. § 31–5–217(b).

[¶ 12] This Court has found that changing lanes, (moving "right or left") requires proper signaling. *State v. Welch,* 873

P.2d 601, 602 (Wyo.1994) (defendant was lawfully stopped for failing to signal a lane change when passing a semi-truck). It is also true that a vehicle that is traveling from an entrance ramp onto the interstate is effectively "moving." However, that maneuver is not one we are clear the legislature intended when it wrote § 31–5–217(a). We cannot declare that merging onto the interstate from an entrance ramp is effectively a movement from right to left. Doing so would render the word "merge" pointless.[1] Again, the primary goal when interpreting a statute is to discern the legislative intent behind Wyoming's statutes and give meaningful effect to the purpose of those statutes. *GDK v. State,* 2004 WY 78, ¶ 8, 92 P.3d 834, 836 (Wyo.2004). Furthermore, this Court has held many times that a statute is "unconstitutionally vague if people of common intelligence must necessarily guess at its meaning and differ as to its application." *Smith v. State,* 964 P.2d 421, 422 (Wyo.1998), (citing *Hobbs v. State,* 757 P.2d 1008, 1011 (Wyo.1988)). Had the legislature intended to require a signal in this instance, we are confident it would have stated its intent more clearly.

[¶ 13] Because Wyoming law is sparse on this particular matter, we briefly turn to other jurisdictions that have interpreted similar language. First, the State points us to two cases in particular, *United States v. Gregoire,* 425 F.3d 872 (10th Cir.2005) and *United States v. Sanchez–Vela,* No. 05–40032–02–JAR 2005, 2005 WL 3068333 (D.Kan.2005), where both courts required the use of a turn signal to merge onto the interstate. In *Gregoire,* the federal court interpreted a Utah traffic law quite similar to the statute at issue here. The court found that the statutory language was unambiguous as it applied to merging, and it agreed with the trial court's factual conclusion that a driver must "move to the left" in order to successfully go from an entrance ramp onto the interstate. *Gregoire,* 425 F.3d at 876–78. Likewise, in *Sanchez–Vela,* the court relied on *Gregoire* and reasoned that the plain language of Kansas law encompasses the act of merging from an on-ramp onto the interstate. *Sanchez–Vela,*

---

1. Merge, as defined by Merriam–Webster's Dictionary 727 (10th ed. 1998), is as follows: "1: to become combined into one; 2: to blend or come together without abrupt change <*merging* traffic>."

2005 WL 3068333, at· 3–4. ·There, the court also found no·reason why merging onto an interstate should be treated any differently from a lane change when both acts involve moving from one channel of travel to another.

[¶ 14] We acknowledge that the cases presented by the State are persuasive, but so is one particular case presented by Juarez. In *State v. Johnson,* 148 S.W.3d 338 (Mo. App. W.D.2004), a statute was at issue that was "patterned generally after the laws of certain states," which included Wyoming. *Id.,* at 340. *Johnson* observed that the statutes cited, including § 31–5–217, ·do not "explicitly require" a signal from a car "starting from a parked position." *Id.,* at 341. The *Johnson* court held that a drug bust was tainted by an illegal traffic stop for failing to signal when pulling away from the curbside, and in doing so, identified other states, aside from Wyoming, which "do explicitly require a signal while starting from a parked position[.]" *Id.,* at 341, n. 2. *Johnson* also stated:

Where statutory language is unclear in context or will lead to an illogical result in light of the overall legislative purpose, we look beyond the plain and ordinary meaning of the words and construe the words in light of the overall purpose. *See Phillips* [*v. Am. Motorist Ins. Co.*], 996 S.W.2d [584 (Mo.App.1994 [1999] ) ] at 587–88.· In the case of an unclear criminal statute, we construe the statute strictly against the State. *See State v. Withrow,* 8 S.W.3d 75, 79–80 (Mo. banc 1999). Here, we think the overall purpose was to require signals (as well as careful driving) when drivers turn left or right or change lanes upon a roadway.

*Id.,* 148 S.W.3d at 344.

[¶ 15] In the instant case, the district court relied on *Johnson* quite heavily. The district court reasoned that *Johnson* pointed out that if a state legislature intended to require signals under the circumstances of the case, it could have easily and clearly said so. The court went on:

According to the State, the plain language of the signal statute clearly requires a turn signal anytime a vehicle moves "right or left" upon the roadway. There is no legal or logical justification, they· say,

for not applying the statute to every left or right movement, including the act of pulling away from a curb. However, under the State's literal interpretation, a signal would be necessary, regardless of the presence or absence of other traffic, every time a car (1) moves to the right or left to avoid a pothole or any object in the roadway; (2) pulls from a parking lot onto a street or roadway (even a one-way street); or (3) backs into a street from a perpendicular parking space.

Briefly, we also note and agree with the district court's mention of the following:

Further, given the ambiguity of Wyoming's statute, the Court also must consider the Rule of Lenity, which requires that "criminal defendants receive the benefit of any [statutory] ambiguity." *Schafer v. State,* 2008 WY 149, ¶ 16, 197 P.3d 1247, 1251 (Wyo.2008). Taking this rule into consideration, along with the equally persuasive precedent from other jurisdictions, the Court concludes that a "tie goes to the Defendant," and that a traffic stop initiated for the sole reason of a failure to signal when merging onto the Interstate is simply too tenuous. Wyoming Statute § 31–5–217 does not require the use of turn signal when entering the Interstate via a designated on-ramp. Because Trooper Green had no other basis upon which to initiate a traffic stop of Mr. Juarez's vehicle, the traffic stop was invalid and the resulting search and seizure of marijuana must be suppressed.

[¶ 16] We agree with the district court that there is no basis in the statute at issue to conclude that a motorist is absolutely required to signal to enter the interstate in every instance. The intended course of Juarez's vehicle was known and obvious to other motorists. He had no choice but to enter the interstate's lane of travel.

## CONCLUSION

[¶ 17] We find no error in the district court's "Order Granting [Douglas Juarez's]

First Motion to Suppress (for an illegal traffic stop)."  Affirmed.